IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SENORX, INC.,                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     Civ. Action No. 12-173-LPS-CJB
                                 )
HOLOGIC, INC.,                   )
                                 )
          Defendant.             )

## MEMORANDUM ORDER

In this action, Plaintiff SenoRx, Inc. ("Plaintiff" or "SenoRx") has filed a Complaint

alleging two counts of patent infringement against Defendant Hologic, Inc. ("Defendant" or

"Hologic"). (D.I. 1)  Presently before the Court is Hologic's Motion to Bifurcate and Stay

Discovery and Trial of Damages and Willfulness Issues ("the Motion" or "Motion to Bifurcate").

(D.I. 15)  For the reasons set forth below, the Court DENIES Hologic's Motion.

## I.     BACKGROUND

On February 10, 2012, SenoRx filed this infringement suit, alleging that Hologic had

directly infringed the patents-in-suit, U.S. Patent Nos. 8,079,946 ("the '946 Patent") and

8,075,469 ("the '469 Patent"), by making, using, offering for sale, and/or selling Hologic's

MammoSite® Multi-Lumen balloon brachytherapy device. (D.I. 1 at ¶¶ 17-32)  The Complaint

also alleges that Hologic indirectly infringed the '469 Patent. (*Id.* at ¶ 29)  Additionally, the

Complaint asserts that Hologic's infringement has been willful. (*Id.* at ¶¶ 21, 30)  SenoRx

sought damages in the form of monetary relief (including an award of up to three times the

amount of damages owed, if willful infringement is found), and sought a permanent injunction

against Hologic for any infringement of the patents-in-suit. (*Id.* at 6)

On May 3, 2012, Judge Leonard P. Stark referred this case to me to hear and resolve all

pretrial matters, up to and including the resolution of case-dispositive motions. (D.I. 6)  On May

23, 2012, Defendant timely answered Plaintiff's Complaint.  (D.I. 7)

On July 26, 2012, Hologic filed the Motion to Bifurcate.  (D.I. 15)  In filing the Motion,

Hologic requests that the Court bifurcate the issue of liability for patent infringement from issues

relating to damages and to whether any infringement was willful, such that damages and

willfulness would be tried, if necessary, separate from and after the liability trial in the case.

(D.I. 16 at 9)  Hologic also asks that the Court stay any discovery regarding damages and

willfulness until after a final determination of liability.  (*Id.*)  The Motion was fully briefed as of

October 15, 2012, (D.I. 34), and was argued on November 27, 2012.  (D.I. 41)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 42(b) states that "[f]or convenience, to avoid prejudice,

or to expedite and economize, the court may order a separate trial of one or more separate issues,

claims, crossclaims, counterclaims, or third-party claims."  "'Under Rule 42(b), a district court

has broad discretion in separating issues and claims for trial as part of its wide discretion in trial

management.'"  *Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431, 441 (D. Del.

2010) (quoting *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987)).

When exercising this broad discretion, courts should consider whether bifurcation will avoid

prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented

in the case.  *Id.*; *Enzo Life Scis., Inc. v. Digene Corp.*, No. Civ. A. 02-212-JJF, 2003 WL

21402512, at *4 (D. Del. June 10, 2003).  In deciding whether one trial or separate trials will best

serve the above factors, the major consideration is directed toward the choice most likely to

2

result in a just final disposition of the litigation. *Sepracor Inc. v. Dey L.P.*, Civil Action No. 06-113-JJF, 2010 WL 2802611, at *3 (D. Del. July 15, 2010) (citation omitted). The party moving for bifurcation has the burden of establishing that it is appropriate. *Id.*; *WebXchange Inc. v. Dell Inc.*, C.A. Nos. 08-132-JJF, 08-133-JJF, 2009 WL 5173485, at *4 (D. Del. Dec. 30, 2009).

## III.    DISCUSSION

The parties first disagree about how uncommon (or common) bifurcation is and should be in patent cases. In doing so, they note difference in the way our Court has addressed that question. SenoRx cites precedent of this Court for the proposition that "bifurcation remains the exception rather than the rule," (D.I. 24 at 4 (citing *Sepracor*, 2010 WL 2802611, at *3; *WebXchange*, 2009 WL 5173485, at *4)), and, even more strongly, that "bifurcation should 'prevail only in exceptional cases.'" (*Id.* at 5 (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 498 F. Supp. 2d 734, 736 (D. Del. 2007))) Hologic, on the other hand, asserts that bifurcation in patent cases in this District is a "presumption," (D.I. 25 at 1), and notes that one District Judge of this Court has determined that "'bifurcation is appropriate, if not necessary, in all but exceptional patent cases.'" (D.I. 16 at 4 (quoting *Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*, Civ. No. 08-343-SLR, 2009 WL 2705932, at *1 (D. Del. Aug. 26, 2009); *Robert Bosch LLC v. Pylon Mfg. Corp.*, Civ. No. 08-542-SLR, 2009 WL 2742750, at *1 (D. Del. Aug. 26, 2009)))

The Court will approach an analysis of whether bifurcation is appropriate on a case-by-case basis, without resort to a general presumption, taking into account all relevant facts and circumstances in the case. *See Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978) (noting that with respect to the question of bifurcating liability from damages pursuant to Rule

3

42(b), "the rule in this circuit . . . has been that the decision to bifurcate . . . is a matter to be
decided on a case-by-case basis and must be subject to an informed discretion by the trial judge
in each instance"); *see also Synopsys, Inc. v. Magma Design Automation*, No. Civ. A. 05-
701(GMS), 2006 WL 1452803, at *4 (D. Del. May 25, 2006); *Willemijn Houdstermaatschaapij
BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989); *Datastrip (IOM) Ltd. v.
Symbol Techs., Inc.*, C.A. No. 97-70-JJF, 1998 WL 35287850, at *2 (D. Del. Jan. 7, 1998).  With
that said, the Court agrees that it is fair to characterize bifurcation as "the exception, not the rule"
in civil cases, including patent cases.  This is so because the actual "rule" governing bifurcation,
Rule 42(b), notes that the default presumption in such cases is that all claims and defenses will
be heard in one trial, unless the Court takes action to the contrary pursuant to the dictates of the
Rule.  *See* Fed. R. Civ. P. 42(b) ("the court *may* order a separate trial of one or more separate
issues") (emphasis added); *see also* Fed. R. Civ. P. 42 Advisory Committee Notes (noting that
while bifurcation should be "encouraged where experience has demonstrated its worth,"
nevertheless "separation of issues for trial is not to be routinely ordered"); *Johns Hopkins Univ.
v. CellPro*, 160 F.R.D. 30, 32-33 (D. Del. 1995) ("In the normal course of litigation, all claims
and issues in a civil action are presented for resolution in one trial.") (citing *Lis*, 579 F.2d 819).
And the maxim is also literally true in practice as to patent cases in this District, where, as to a
majority of such cases, they are presumed to proceed to trial as to all claims and defenses unless a
party affirmatively moves to the contrary under Rule 42.

   With this general approach confirmed, the Court now analyzes Hologic's arguments in
favor of the Motion to Bifurcate.  In doing so, it will examine whether bifurcation will avoid
prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented

4

in the case, so as to determine whether bifurcation is most likely to result in a just final

disposition of the litigation.

### A.   Prejudice

With regard to whether bifurcation will avoid prejudice to SenoRx, Hologic asserts that

because the Motion to Bifurcate was filed at an early stage in the case, with the close of fact and

expert discovery many months away, SenoRx would face little prejudice if the Motion were

granted.  (D.I. 16 at 2)  This argument tends to ignore the harm that a plaintiff like SenoRx would

face, were it to be successful in proving its infringement allegations, from, *inter alia*, the

"inevitable delay, and resulting prejudice . . . of two separate trials." *Joy Techs., Inc. v. Flakt,*

*Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991); *see also Willemijn Houdstermaatschaapij*, 707 F.

Supp. at 1435.  Courts have noted that such prejudice is real, and cannot be mitigated by any

action short of denying the request for separate trials. *See Real v. Bunn-O-Matic Corp.*, 195

F.R.D. 618, 621 (N.D. Ill. 2000).

Hologic also asserts that not granting bifurcation will prejudice *it*, as the parties are "hard-

fought competitors" and inquiry into damages and willfulness issues is likely to be intrusive and

onerous.  (D.I. 16 at 8)  However, Hologic does not articulate with specificity why this inquiry is

likely to be any more onerous than in the typical patent case litigated between direct competitors,

in which such discovery is regularly produced.  At times, Hologic suggests that its most

significant concern in this area regards the requirement to provide, in discovery, "sensitive

commercial and financial information concerning [damages]" to SenoRx.  (D.I. 25 at 7)

However, again Hologic does not explain with particularity why the requirement to produce such

documents in this case, under the auspices of an agreed-upon protective order, will be any more

5

difficult or worrisome than it would be in any other such case. Moreover, Hologic will have the

ability to seek relief from any unduly burdensome or onerous requests via the Court's discovery

dispute procedures if such relief is appropriate under the law.

All told, the parties do not spend much time in their briefs discussing the prejudice prong.

For its part, the Court finds that Hologic has not shown that any prejudice it might suffer in

making the productions discussed above outweighs the harm SenoRx would face in seeing its

case split in two.

**B.    Conservation of Judicial Resources**

Hologic next argues that bifurcation will conserve judicial resources, in that: (1) the

issues of liability and damages/willfulness "are distinct and involve significantly different types

of evidence, which makes the issues readily separable"; (2) if the jury finds that Hologic is not

liable for infringement, or that the patents are invalid, the issues of damages and willfulness need

never be tried and (3) a separate determination of liability could promote resolution of the case

through settlement, or streamline the issues for the damages/willfulness phase.  (D.I. 16 at 2)

Our Court has noted that "an overlapping of issues is significant to the decision whether

to bifurcate," in that the more that two bifurcated trials would tred the same legal and evidentiary

ground, the less it can be said that bifurcation would serve judicial efficiency. *Willemijn

Houdstermaatschaapij*, 707 F. Supp. at 1434.  Here, as to whether the issue of liability is "readily

separable" from those of damages and willfulness, as Hologic contends, the record is mixed.

Hologic may be correct that there will not be substantial overlap between liability and damages-

related evidence.  However, some real overlap is inevitable, as it will likely be necessary to set

out certain core testimony about the relevant products and industry in both the liability and

6

damages trials. *See, e.g., Masimo Corp. v. Philips Elec. N. Am. Corp.*, 742 F. Supp. 2d 492, 497

(D. Del. 2010); *Datastrip*, 1998 WL 35287850, at *3. Moreover, at least some evidence

regarding the commercial success of the products-at-issue, relevant to a determination of

obviousness under 35 U.S.C. § 103, will overlap with evidence necessary to assess damages.

(D.I. 41 at 60-61, 74); *Willemijn Houdstermaatschapij*, 707 F. Supp. at 1434; *Datastrip*, 1998

WL 35287850, at *3.[1] Even more significant would be the evidentiary overlap regarding liability

and willfulness issues. In fact, at oral argument on the Motion, Hologic itself acknowledged that

there will be "significant overlap on issues of willfulness and the intent elements necessary to

prove indirect infringement." (D.I. 41 at 61)

    With regard to the other efficiencies cited by Hologic (such as the fact that a finding in its

favor as to liability would eliminate the need for a second trial on damages/willfulness, or that an

alternative finding of liability could facilitate settlement), the Court notes that these outcomes,

while possible, are entirely speculative at this stage. *Sprinturf, Inc. v. Southwest Recreational

Indus., Inc.*, No. Civ. A. 01-7158, 2004 WL 96751, at *2 (E.D. Pa. Jan. 15, 2004) ("[T]he

validation of this type of self-serving argument, without more, would permit all defendants in all

cases to sever liability from damages."); *Datastrip*, 1998 WL 35287850, at *3. More concrete is

the reality that the parties, with this Motion pending, have already been engaged in disagreements

over whether certain discovery should fall into a "liability" or "damages/willfulness"

---

[1]     The Court does recognize, however, that the question of commercial success is "'not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the product is, broadly speaking, an accepted product and a big seller.'" *Willemijn Houdstermaatschapij*, 707 F. Supp. at 1434 (quoting *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1116 (D. Del. 1984)).

category—an inefficiency that would be avoided if the case were not bifurcated. (D.I. 41 at 76; D.I. 24 at 14; D.I. 25 at 7-8); *see also Sprinturf*, 2004 WL 96751, at *3 ("[W]ith two separate trials, it is not only possible, but probable, that repeated discovery disputes will arise over whether requested discovery is related to liability, damages, willfulness, or all of these issues, thereby leading to extended delay, unnecessary paperwork, more legal fees, and increased judicial intervention.") (internal quotation marks and citation omitted).

For these reasons, the Court does not find that Hologic has demonstrated that judicial resources would be best conserved by two separate trials.

## C.    Enhancement of Juror Comprehension of the Issues

As to whether bifurcation would enhance juror comprehension of the issues presented, Hologic argues that the liability and damages/willfulness phases of the case bring with them "complex issues with distinct factual inquires." (D.I. 16 at 2) It asserts that were a jury required to hear "extensive evidence on the claimed inventions, the prior art[,] . . . the accused product [and] . . . issues of patent law, engineering, and brachytherapy" along with evidence on damages and willfulness, jury confusion will be a likely byproduct. (*Id.* at 2, 5-7)

Courts are less likely to grant bifurcation when the issues to be decided are not particularly complex and a single trial on all issues thus does not carry with it a significant risk that the trier of fact will be confused. *See Willemijn Houdstermaatschaapij*, 707 F. Supp. at 1434-35. This case involves the subject matter of medical device engineering, brachytherapy and radiation therapy, and how that subject matter overlaps with legal issues such as whether the patents-in-suit were infringed, whether the infringement was willful, and whether the patents are nonetheless invalid. (D.I. 16 at 5) As to a damages inquiry, the jury may, at a minimum, need to

confront issues including what would have constituted a reasonable royalty at the time of a hypothetical negotiation between the parties, and whether SenoRx can demonstrate that a "lost profits" theory of damages is appropriate. (*Id.* at 6; D.I. 41 at 72) The Court does not doubt that this subject matter is complex, and agrees with Hologic that this case will pose a challenge for a jury.

However, patent cases often implicate difficult subject matter that may be unfamiliar to most jurors. The subject matter relating to the patents-in-suit does not strike the Court as significantly more complex than that confronted by juries in this District in many patent cases. Yet patent juries are, in the main, presumed able to digest such subject matter with the aid of able presentations by counsel. *Synopsys*, 2006 WL 1452803, at *4. Moreover, although calculating "reasonable royalty" or "lost profits" damages is not easy, those are the computations that juries are often called upon to confront in a patent case. *See, e.g.*, *Sprinturf*, 2004 WL 96751, at *2 (denying motion to bifurcate in part because, although damages determination would involve utilization of a "reasonable royalty" test and a "lost profits" analysis, defendants "ha[d] failed to indicate why the presentation of damages evidence would be any more complex than in the typical patent case"); *Real*, 195 F.R.D. at 622-23 (same). Nor has Hologic made a compelling case that the amount and scope of the evidence relating to damages or willfulness will be so large or unwieldy as to necessitate two trials. *Cf. Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 983-84 (D. Del. 1982) (citing that the damages inquiry would involve a review of millions of documents and require extensive time during trial in support of decision to hold separate trials on liability and damages).

In addition, other factors that might exacerbate the level of complexity involved in a

9

patent case are not present here. The case involves only two patents-in-suit, which share, in all

material respects, the same specification. (D.I. 24 at 2); *see Crown Packaging*, 498 F. Supp. 2d

at 737-38 (denying motion to bifurcate, in part due to the fact that as to two patents-in-suit, the

patents "contain[ed] substantially identical specifications, reducing the issues for trial"). While

those patents collectively contain 99 claims, SenoRx notes that the number of asserted claims has

already been much reduced, and assures the Court that the number of claims ultimately asserted

will be of a manageable number.[2] (D.I. 24 at 8 n.2) The case involves just one plaintiff, one

defendant, one accused product and no associated non-patent claims or counterclaims—as to

those metrics, it does not carry with it an undue amount of complication. *See Real*, 195 F.R.D. at

621-22 (analyzing complexity of case by examining number of parties involved, patents at issue,

infringing products, and the presence of non-patent claims or counterclaims). In addition, the

record does not demonstrate that the amount of discovery produced to date has been significant;

indeed, Hologic itself has noted the relatively minimal scope of that production through the end

of 2012. (D.I. 28 at 2; D.I. 41 at 11) And while the jury will need to grapple with issues

including that of infringement, willfulness and invalidity, Hologic has also explained that certain

other defenses referenced in its Answer (such as Section 101 or Section 112 defenses) are

unlikely to be relevant to this case. (D.I. 41 at 59)

This patent case is not without complexity. However, the Court finds that Hologic has

not demonstrated that this complexity is of such magnitude that separate trials would be required

to enable the jury to ably fulfill its role as fact finder.

---

[2]     As of the date of oral argument on this Motion, SenoRx had already reduced the
number of asserted claims at issue to 20. (D.I. 41 at 68)

## IV.   CONCLUSION

Ultimately, for the reasons set forth above, the Court does not believe that Hologic has made a sufficient showing that bifurcation will avoid prejudice, conserve judicial resources, or enhance juror comprehension of the issues in this case. Its arguments in favor of bifurcation tend to emphasize generalities rather than specifics, and do not demonstrate why this case (as opposed to many other patent cases in this District) warrants two trials. Therefore, the Court concludes that bifurcation is not likely to result in a just final disposition of the litigation.[3] For the reasons set forth above, it is ORDERED that Hologic's Motion to Bifurcate, (D.I. 15), is DENIED.

Dated: January 30, 2013

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[3]      Relatedly, the Court does not find that Hologic's request to bifurcate discovery is warranted.